John BARNES *v.* STATE of Arkansas

CA CR 85-9                                    691 S.W.2d 178

Court of Appeals of Arkansas
Division I
Opinion delivered June 12, 1985

*Young, Patton & Folsom*, by: *Damon Young*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. John Barnes appeals

from his conviction of the crime of the sale of a controlled substance for which he was sentenced to a term of seven years in the Department of Correction. We find no merit in any of the six assignments of error advanced on appeal and affirm the conviction.

At the trial the State called two witnesses. Jerry DeWayne Howard testified that he was an undercover agent for the Arkansas State Police Narcotics Division. In January of 1983 he was on assignment in Miller County for approximately six months as a part of an investigation which resulted in the arrest of fifty-four individuals. During this period he worked with confidential informants who furnished him with names of persons suspected of dealing in drugs and assisted him in arranging meetings with them. One informant told him that the appellant was dealing in marijuana and went with him to the appellant's home. When they arrived the informant knocked on the door and the two were invited in the house. According to the police officer the informant was known to the appellant and they discussed controlled substances for a period of time before he asked appellant to sell them marijuana. Appellant agreed to do so and as appellant was handicapped and in bed he directed the agent to look for the marijuana in a coffee can near the stereo. The agent found two bags of marijuana in the coffee can, took one bag out, and paid $75 to the appellant for the marijuana. After discussing the possibility of returning and purchasing more from him in the future the officer and the informant left. As the police officer was working in an extended investigation the arrest was made later to keep his identity from being known. The State's second witness, an expert chemist, testified that the substance purchased from the appellant and delivered to him was in fact marijuana.

The appellant testified in his own behalf. He denied that he had sold the marijuana to the officer and offered proof tending to show that he could not have sold it at his house on the day the officer testified. He argues that the verdict was not supported by sufficient evidence of guilt. We do not agree.

Throughout these proceedings the appellant elected to proceed pro se and without the benefit of counsel, appointed or retained. On the date of trial he consulted with his son and authorized his son to sign for him a waiver which stated he

understood that under both state and federal law he was entitled to counsel and would be provided counsel free of charge if unable to obtain one. He acknowledged further that he was aware that if he requested counsel one would be provided and that he had been informed by the court that his waiver of counsel would not preclude him from claiming that right in future proceedings if he requested it. At the bottom of the written waiver over the signature of the circuit judge appeared the following: "I have questioned the defendant and find that he intelligently waived counsel and was competent to do so." The appellant himself questioned the jurors on voir dire, made an opening statement, cross-examined the State's witnesses, and testified in his own behalf. At no time during the course of the trial did he request the assistance of counsel.

On appeal for the first time he contends that the trial court erred in allowing him to proceed without the assistance of counsel. Ark. Const. art. 2, § 10 provides that an accused in a criminal prosecution shall enjoy the right to be heard by himself and his counsel. We have clearly recognized the right of a defendant to conduct his own defense in a criminal trial whether for felony or misdemeanor if he elects to do so. *Barnes* v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975). The United States Supreme Court has declared that this right exists under the Sixth Amendment to the Constitution and it is applicable to the states by the Fourteenth Amendment independently of our own constitution and case law. *Faretta* v. *California*, 422 U.S. 806 (1975). Both *Barnes* and *Faretta* make it clear that the State may not force a defendant to accept counsel against his will or deny his request to conduct his own defense. Where the accused knowingly and intelligently declines the assistance of counsel and asserts his constitutional right to represent himself the court should not interfere with the free exercise of that constitutional right. It is only necessary that the election be made "with eyes open" and technical and legal knowledge is totally irrelevant in the assessment of a knowing and intelligent exercise of the right.

Appellant argues that the record does not show that he was given a warning of the advantages and disadvantages of proceeding pro se before the election was made. While it might be better for the record to contain and express warning by the court of the disadvantages of self representation in order to establish

that the accused knows what he is doing and his choice is made with his eyes open, neither *Faretta* nor *Barnes* requires it. The only qualification on the waiver of right to representation is that it be voluntarily and intelligently made. It requires only that the accused have "full knowledge or adequate warning concerning his rights," and this determination must be made in each case on the particular facts and circumstances surrounding it. *Barnes* v. *State, supra.* The cases relied upon in *Faretta* make this clear. *Adams* v. *United States*, 317 U.S. 269, 605 (1942).

■ This record is devoid of anything indicative of involuntariness in appellant's election. The record reflects that a bench warrant was issued on March 30, 1983. On April 15, 1983 appellant appeared, waived counsel, entered a plea of not guilty and his trial was set for May 9, 1983. The case was continued on appellant's motion six times during the ensuing thirteen months before his trial on June 18, 1984. On the day of the trial he executed a written waiver of his right to counsel on which the trial judge recorded that he had questioned him and found that the appellant was competent and had intelligently waived his right to counsel. At the time the waiver was signed appellant was assisted by his son because of his physical handicap. Throughout the entire period appellant persisted in his election to conduct his own defense. We are not concerned with the wisdom of his choice but only with whether it was voluntarily and intelligently made. We cannot conclude from these facts and circumstances that the trial court erred in finding that it was.

■ The appellant argues that the trial court should have offered him the benefit of standby counsel to act in an advisory capacity. The court is not required to do this but may do so if it determines it to be necessary. However, *Faretta* and *Barnes* make it clear that the court cannot force an attorney upon an unwilling defendant and, although it may in some instances appoint standby counsel, that counsel cannot be permitted to interfere with the accused's own presentation of his defense.

The appellant contends that the court did not inquire into appellant's mental condition or determine whether he was under the influence of medication which might prevent an intelligent waiver. He relies on his testimony during cross-examination that he was taking Valium and Codeine to relieve the pain of the

gunshot wound which had crippled him. He made that statement in an apology to the jury for his mouth's being dry and in no way intended to indicate to anyone that he was not mentally alert as a result of it. The court stated that he had determined appellant to be competent and to have knowingly and intelligently executed a waiver. Appellant's own son had consulted with the appellant immediately before the written waiver was executed. The son, who was in a better position than anyone else present to determine whether the appellant was affected by any medication, made no such assertion. Our examination of the record and his conduct of his defense does not convince us that appellant was under the influence of any drugs.

Appellant next contends that there was not substantial evidence to support the jury's verdict. He argues that the confidential informant did not testify, thereby leaving the testimony of the undercover officer to stand uncorroborated and sharply contradicted by the appellant, and therefore rendering it insufficient to overcome the presumption of innocence beyond a reasonable doubt. While it is well settled that under Ark. Stat. Ann. § 43-2116 (Repl. 1977) a criminal conviction cannot be sustained upon the uncorroborated testimony of an accomplice, it is as well established that a police officer who buys a controlled substance from the accused is not an accomplice of that person from whom he purchased it and his testimony is not required to be corroborated. *Brizendine v. State*, 4 Ark. App. 19, 627 S.W.2d 26 (1982). On appeal from a jury's verdict this court views the evidence in the light most favorable to the appellee and will affirm if there is any substantial evidence to support the verdict. *Boone v. State*, 282 Ark. 274, 668 S.W.2d 17 (1984). The credibility of witnesses and the weight to be given their testimony is within the province of the jury. We cannot conclude that the jury's verdict was not supported by substantial evidence.

Appellant contends that the court erred in admitting testimony of specific instances of prior misconduct which is prohibited by Unif. R. Evid. 608(b) unless the evidence is probative as to the truthfulness or untruthfulness of the witness. He argues that the questions were not asked to test the appellant's veracity but merely to prejudice the jury and show a propensity on the part of the appellant to commit the offense charged. This issue was not raised in the trial court and cannot be raised for the first

time on appeal.

Furthermore the appellant took the witness stand in his own behalf asserting that he had nothing to hide and would answer any questions put to him. After the State rested its case the appellant called his first witness to testify to his character. As his character had not been put into issue by the State the trial court ruled that he could not do this until it became an issue. The court then advised the appellant that while he was not required to testify in his own behalf, if he wished to do so he would be permitted to do so. The appellant then indicated that he did not desire to make a narrative statement or ask himself questions. He indicated that if the State had any questions to ask him he would take the witness stand, saying: "I am agreeable to anything you want to ask me, Mr. Johnson. I hide nothing from no one. You just put me on the stand." The court permitted this procedure at appellant's request.

Appellant was asked if he had sold marijuana to the agent and he denied this. He was then asked if he did in fact sell marijuana and he admitted that he had sold it on prior occasions but said he he did not sell it on the date charged. He stated he had not sold any marijuana "recently." He was then asked if he in fact had over a half pound of marijuana in his home on the day he was arrested and he admitted that he did. The only objection that he made when asked to disclose the name of the person from whom he had purchased the half pound was that he had given his word he would not divulge that name. When asked how he came into possession of the half pound, appellant protested that this was a "double jeopardy deal." When the court ordered him to answer the question, he then stated that he had not purchased it but had grown it on his own property for his own use. The appellant opened up the question of possession of marijuana on other occasions and should not now be heard to complain of that for which he was responsible. He had already answered several questions concerning his possession of marijuana without objection. We find no error.

During the appellant's cross-examination of the undercover agent he asked the agent the name of the person who accompanied him to the appellant's home on the date of the sale. The following then occurred:

MR. JOHNSON: I will object to that. A confidential informant's identity is not discoverable by this defendant at this stage of the proceedings.

MR. BARNES: There is nothing else that I know of that I could ask this man at this particular time.

THE COURT: You may step down.

Appellant contends the court erred in refusing to sustain his request for disclosure of the confidential informant's identity. We find no merit to this contention because the court never ruled on the State's objection and appellant pursued this question no further.

Nor do we find merit to the appellant's contention that the failure to disclose the identity of the confidential informant was prejudicial to his case. When an informant is also a witness to or a participant in the crime his identity should be disclosed. However, this rule depends on the circumstances of each case. Limitations are placed on the disclosure of the identity of informants because of the public interest in fostering and protecting the free flow of information on criminal activity. *James* v. *State*, 280 Ark. 359, 658 S.W.2d 382 (1983). We conclude that the prosecutor's objection was well taken. There had been no prior effort to obtain the identity of the confidential informant, to obtain information from him to prepare a defense, or to have him present as a defense witness. Unless disclosing the identity of the informant was necessary for preparing and presenting a defense and public interest rule would govern. Furthermore, there was evidence from the police officer that the confidential informant was known to the appellant at the time the purchase was made and that this was one of the reasons that the appellant discussed the contraband with him so freely and made the sale to him so readily.

On direct examination the undercover officer testified that after the initial purchase from the appellant they discussed the future sale of larger quantities and that appellant had agreed to sell more. On cross-examination the appellant asked the officer why he had not come back to "bust" him for possessing a larger amount. The officer answered: "Mr. Barnes, I believe when they arrested you they found several ounces of marijuana in your

house." Appellant objected stating that this did not have anything to do with the case. The court overruled the objection. The appellant now argues that the court erred in failing to sustain appellant's objection to a nonresponsive answer. Although we are inclined to agree with the trial court's ruling that the answer was responsive, we would find no error otherwise. The court was not called upon to make any ruling on the voluntary answer given by the witness, to give any admonition to the jury, or in fact to do anything at all. Appellant cannot now complain that the trial court erred in not striking the answer or in admonishing the jury to disregard it. *Midwest Bus Lines, Inc.* v. *Williams*, 243 Ark. 854, 422 S.W.2d 869 (1968).

The appellant finally contends that the trial court erred in sentencing him for a felony rather than a misdemeanor because the applicable provision of Ark. Stat. Ann. § 82-2617(a)(1)(iv) (Supp. 1983) does not specifically declare the violation to be a felony but merely provides for imprisonment for not less than four nor more than ten years. We do not find in the abstract or record that this argument was presented to the trial court and it cannot be raised for the first time on appeal. *Tolland* v. *State*, 285 Ark. 415, 688 S.W.2d 718 (1985).

Affirmed.

COOPER, J., agrees, CORBIN, J., concurs.

DONALD L. CORBIN, Judge, concurring. I concur in the affirmance of this conviction, but for different reasons. Clearly, the actions of appellant in getting his trial date reset six times indicate that he had more than a passing acquaintance with our system of criminal jurisprudence. He was able to successfully delay his trial from May 9, 1983, until June 18, 1984, some 13 months, by obtaining six continuances, a feat which many competent attorneys are not readily capable of doing. It is difficult for one to imagine that from the time appellant was served with the warrant for his arrest on March 30, 1983, until the day of his trial on June 18, 1984, he was not made aware of the potential pitfalls if he proceeded in a pro se defense. Certainly, an intelligent and voluntary waiver was made by this appellant to proceed pro se.

I differ with the majority as I believe *Faretta* v. *California*,

422 U.S. 806 (1975), and *Barnes* v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975), require an express warning by the trial court of the dangers and disadvantages of self representation so the record will establish that the defendant knows what he is doing and his choice is made "with eyes open." The defendant's technical legal knowledge is totally irrelevant in assessing his knowing exercise of the right to defend himself, but he should be warned of the hazards in representing himself because of technical procedures and rules of evidence which a layman is not equipped to handle.

In the case at bar it is not clear whether appellant received such a warning from the trial court. The failure to make a record of the warning makes it difficult if not impossible for this Court to review and make a determination of this issue on appeal. However, in view of the circumstances and appellant's success in obtaining six continuances, I must agree with the majority that an intelligent and voluntary waiver was made by appellant to proceed pro se.