Hiram Eugene MEYER, Appellant,

v.

Willis SARGENT, Warden, Arkansas Department of Corrections, Appellee.

No. 87–2479WA.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1988.

Decided Aug. 24, 1988.

Rehearing Denied Nov. 4, 1988.

Mark E. Ford, Fort Smith, Ark., for appellant.

Olan W. Reeves, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before FAGG, Circuit Judge,
BRIGHT, Senior Circuit Judge, and
HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Hiram Eugene Meyer appeals the District Court's[1] dismissal of his habeas corpus petition. Meyer asserts that he was denied due process and equal protection of the law by: (1) being subjected to double jeopardy; (2) being denied his sixth amendment right to assistance of counsel at trial; and (3) being denied effective assistance of appellate counsel. We affirm the decision of the district court for the reasons discussed below.

## FACTS

In reviewing appellant's claims we find those related to the claim of double jeopardy to be entirely without merit. Accordingly we recite here only those facts relevant to the assistance of counsel claims.

On April 22, 1980 appellant Meyer was tried for the crime of aggravated robbery in the Circuit Court of Sebastian County, Arkansas, the Honorable David Partain presiding. Meyer was represented by then public defender Don Langston at the beginning of the trial. After opening statements and after the state's two main witnesses had testified and been cross-examined thoroughly by Meyer's attorney, Meyer presented the trial court with a motion for a change of attorney. The trial court, in response to this motion, held an in cam-

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable H. Franklin Waters, Chief United States District Judge for the Western District of Arkansas.

era hearing in which the following discussion took place.

MR. LANGSTON: Your honor, I was having a conference with Mr. Meyer in this outer office out here just a moment ago, and he handed me this, which he just wanted me to tender to be filed for him. I therefore offer this and file it in open court, and it should be placed in the case file. And he will present it. Defendant's exhibit # 1 to a motion to relieve the Public Defender as counsel.

THE COURT: All right, Mr. Meyer, I would be glad for you to state for the record why you should have a change of attorneys right in the middle of a trial.

MR. MEYER: Well, I have been down to the penitentiary and was not able to do anything up here, and when I came back I spoke with Mr. Langston, and seeing the results of the beginning of this trial I feel that he has (sic) already convinced that I should go on down and do time or whatever. I don't think he is fighting it as much as he could, or in the proper way.

THE COURT: Well, of course, you are entitled certainly to your opinion how you feel about your particular case. It has been my experience that Mr. Langston has been a very dedicated representative of all of his clients. He has tried several capital murder cases in my court, and I think he did a very excellent job. And the ultimate results, of course, might not be what you wish, but there might be circumstances where he is just doing the best he can. But now I think we are right in the middle of the trial, and I am going to give you an option to proceed in one of two ways. I am not going to relieve Mr. Langston in the middle of the trial. Things just are not done that way. Now, if you wish to represent yourself, if you don't want him to represent you at all and wish to represent yourself, I will request and insist that Mr. Langston be in the courtroom. And if you wish, you can consult with him at any time you wish. If you do not wish to, that will be your privilege. Or if you wish him to continue to represent you, why that will be your option. But you just cannot get in the middle of a trial like this and then try to terminate your attorney in this matter. So I want you to clearly understand that if you wish to represent yourself during the rest of these proceedings, you may do so. And if you do that, then I will merely ask that Mr. Langston sit over on the front bench of the courtroom and he will be available to answer any questions you might have, if you have any, or if you desire to consult with him. Or, if you wish, and it is entirely your decision, for him to continue to represent you then the Court will order that he do so.

MR. MEYER: Well, I do not want Mr. Langston to represent me in the rest of the case. If you want to send me in there just totally without, that's fine. Just handle it however you usually do.

THE COURT: Well, I think under the law that that is all we can do. I am sorry this has happened. I hate to see any case where a client is not satisfied with the services of his attorney. We have proceeded, the jury has been sworn, so Mr. Langston if you will just make yourself available now. If he wishes to represent himself, then I am going to let him do it.

MR. MEYER: I do not wish to represent myself, as it states in the motion.

THE COURT: Well, I know you do not, but that is the situation I think you find yourself in, right in the middle of the course of this trial, Mr. Meyer. We would have to suspend this trial, and have another jury, and appoint another attorney at this late date. So if you wish to represent yourself, then Mr. Langston will be available.

MR. MEYER: Well, I don't wish to represent myself, but I don't want Mr. Langston.

THE COURT: All right, the record will show that you object to the Court not appointing you another attorney, and he does not wish to represent himself, nor he does not wish (sic) for Mr. Langston to represent him.

MR. WHEELER: Also, we want the record to note that Mr. Langston is available to be counsel for Mr. Meyer.

THE COURT: All right, lets proceed.

Following this colloquy the record indicates that Mr. Langston removed his belongings from the defense table and took a seat at a bench inside the rail area of the courtroom. The bench was within talking distance of the defense table according to Mr. Langston. At this point the state called one last witness. After the witness testified the court explained to Meyer that he had the right to cross-examine the witness and asked him if he wished to do so. Meyer, acting pro se, declined to cross-examine this witness terming the proceedings a "kangaroo court" and arguing that a continuance should be granted. In support of his motion for a continuance Meyer told the court "I don't have representation, and I don't have time to study the legal material."

The court denied the motion for a continuance and told Meyer "I am going to try to give you every opportunity that I can to advise you how this trial is going to be conducted". The defense then rested and the court proceeded to explain to Meyer that he had a right to "call whomever you wish to testify in your behalf. That is entirely up to you. If you do not wish to do so, why then of course the Court will instruct the jury, and it will be submitted to the jury on the testimony that has been introduced." Meyer responded by again moving for a continuance stating that he needed time to get his case together.

At this point the court held another short in camera hearing to discuss Meyer's rights and the need for a continuance. During this hearing, in which Mr. Langston took part, Meyer told the court he wanted a continuance in order to pursue his motion for "a change of attorney to state my case, and for access to law books where I can see what is happening here, because I don't know anything about courtroom proceedings." The court then discussed the evidence in the case with Meyer and determined that as Meyer was familiar with all of the evidence in the case a continuance was not warranted. Following this discussion the court once again asked Meyer if he wished to call any witnesses. The court also explained to Meyer that he had a right to testify on his own behalf, but that this right was a privilege and not a duty and that if he did not testify "there will be no comment made during the trial of this case as to your failure to testify." The court then called a 15 minute recess.

After the recess Meyer read into the record the testimony of a defense witness who was unavailable for the trial. The testimony had been given by the witness at a prior hearing and the court explained to the jury that it should consider the evidence along with all other evidence heard. Meyer then took the stand himself and denied any involvement in the aggravated robbery. After he was cross-examined the court asked Meyer if he had any other witness. Meyer said he did not have any more witnesses to call, noting that two other witnesses who had been subpoenaed to testify about his whereabouts on the day in question could not actually recall "the time or anything" that they had been with him. The defense then rested.

The court then instructed the jury, and the state and Meyer presented closing arguments. One and one-half hours later the jury delivered a verdict finding Meyer guilty. He was subsequently sentenced to 40 years in prison.

The verdict was appealed by the now defunct Arkansas Appellate Defender's Office on Meyer's behalf. The appeal was consolidated with an appeal of an eighteen-year sentence Meyer had received under a probation revocation proceeding related to the same robbery at issue here. Meyer asserts that he was not aware that the Appellate Defender's Office was appealing the conviction. The attorney who handled the case does not remember meeting with Meyer about the appeal, but stated at a deposition pursuant to the federal district court's evidentiary hearing that she assumes that under general office guidelines someone from the office would have told him that the case was being appealed. Additionally, the record shows that at the

sentencing hearing Judge Partain stated on the record with Meyer present that Meyer's appeal would be handled by the Appellate Public Defender.

In the appeal three issues were raised, two related to the probation revocation and one to the aggravated robbery conviction. The appeal did not contain a challenge of the trial court's decision to have Meyer proceed without counsel at trial. The Arkansas Supreme Court did hold for Meyer on one of the issues regarding the probation revocation but denied the appeal with regard to the aggravated robbery conviction. Meyer asserts that it was only after the Arkansas court's denial of this appeal that he even learned the case had been appealed.

Subsequently Meyer filed a pro se petition for post-conviction relief pursuant to Arkansas Criminal Procedure Rule 37. In the petition he alleged that his trial had numerous errors of "Constitutional dimension" including "claims of trial misconduct, errors constituting due process violations, ineffective assistance of counsel," and claims of suggestive pretrial identification. The Arkansas Supreme Court denied this motion in a ruling issued on March 8, 1982 on the grounds that the allegations were conclusory and without any substantiation.

Several facts related to the probation revocation hearing, which took place two months prior to the aggravated robbery trial, are also relevant to this case. These include the fact that Judge Partain had also presided over this hearing, giving him additional insight into Meyer's actions and abilities, and the fact that Langston had served as Meyer's counsel at this hearing also. Additionally, the transcript shows that the hearing was basically a "rehearsal" of the subsequent aggravated robbery trial with both the state and the defense presenting their cases regarding the robbery in full.

Interestingly, these records also show that Meyer was already expressing concern about being represented by a public defender at this early stage, and that he had successfully postponed both the probation revocation hearing and the trial itself on the grounds that he did not want to be represented by the public defender and that he needed additional time to acquire private counsel. Perhaps most importantly though, these records include additional instruction from Judge Partain to Meyer regarding his rights to counsel and as a defendant in the criminal justice system. They also contain additional evidence of Meyer's knowledge regarding his rights to representation. For example, at a motion hearing held on January 21, 1980 Judge Partain and Meyer had an extended discussion regarding Meyer's right to counsel and whether Meyer wanted counsel to represent him with regards to the motion before the court or whether he wanted to represent himself on it. Noting his disdain for public defenders, Meyer told the court that if he did accept a public defender as counsel to represent him on the motion he would like to just "refer to him on the legal technicalities that I do not understand."

On May 1, 1986 Meyer filed a petition for a writ of habeas corpus in the district court below. The district court denied Meyer's writ on all grounds. The court ruled that Meyer's right to assistance of counsel at trial had not been violated because: (1) he had not made a sufficient showing to warrant a substitution of counsel in mid-trial; and (2) Meyer's insistence that Langston be removed as defense counsel, after being cautioned that no replacement counsel would be appointed, was the functional equivalent of a knowing and intelligent waiver of counsel. The district court also ruled that Meyer was entitled to no relief with regards to the alleged ineffectiveness of his appellate counsel because no prejudice had been shown, and that Meyer's double jeopardy argument was without merit.

## Analysis

We begin our analysis by noting that "the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial." *United States v. White*, 529 F.2d 1390, 1393 (8th Cir.1976). Additionally, it is well settled that a "crimi-

nal defendant does not have the absolute right to counsel of his own choosing." *Carey v. State of Minnesota,* 767 F.2d 440, 441 (8th Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 536, 88 L.Ed.2d 467 (1985). Instead, "[s]ubstitution of counsel is a matter committed to the sound discretion of the trial court." *Nerison v. Solem,* 715 F.2d 415, 418 (8th Cir.1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 220 (1984) and 465 U.S. 1026 (1984). It is also settled law that a criminal defendant has the right to waive his right to counsel at trial and to represent himself as long as the waiver is both voluntary, and intelligently and knowingly made. *See, Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1980); *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2239, 45 (1974).

■ Our review of the entire record in this case indicates that the trial court was clearly acting within its discretion in denying Meyer's motion for a substitution of counsel. There is simply nothing in the record to suggest that Langston's representation was sub-standard. Additionally, we agree with the district court that appellant's decision to continue to seek the removal of his appointed counsel, after being cautioned that no replacement counsel would be appointed, was the functional equivalent of a "voluntary" waiver of his right to counsel in the sense that it was not a waiver forced upon him.

Meyer knew that the court would not appoint him a replacement counsel for Langston, and he knew that if he continued to seek Langston's dismissal the trial court would remove Langston as his representative keeping him in the court on a passive stand-by basis only. Accordingly, Meyer's decision to seek the removal of his counsel despite this knowledge cannot be termed anything other than a voluntary waiver of his right to have counsel represent him at trial. Thus, we turn to the issue of whether the waiver was also "knowing and intelligent".

The "key inquiry" in reviewing a Sixth Amendment waiver to determine whether it was knowingly and intelligently made

"must be" to determine whether the accused was "made sufficiently aware of his right to have counsel" and "of the possible consequences of a decision to forgo the aid of counsel" so that his choice is made with his eyes open. *Patterson v. Illinois,* —— U.S. ——, ——, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988). The Supreme Court has taken a pragmatic approach to this inquiry "—asking what purposes a lawyer can serve at the particular stage of the proceeding in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Id.* —— U.S. at ——, 108 S.Ct. at 2397–98.

■ Courts, in making this assessment, must look "in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards,* 451 U.S. at 482, 101 S.Ct. at 1884 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). This is because the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1983). Thus, a specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources. Importantly, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation". *Faretta,* 44 U.S. at 835, 95 S.Ct. at 2239.

The facts in this case show that the waiver was "knowingly and intelligently" made. First, the record shows that Judge Partain, during the course of the probation revocation proceedings and the trial, thoroughly explained to Meyer his rights in presenting his defense. Second, Meyer had had previous contact with the criminal justice system sufficient to give him a general

knowledge of the dangers and disadvantages of self-representation. This knowledge was explicitly acknowledged by Meyer on several occasions, with one such example being his expressed desire to have a public defender help him with the "legal technicalities that I do not understand." Third, Meyer's conduct at the trial, at the probation hearing, and at the various hearings, indicated that he had a good knowledge of the criminal justice system. For example, he gave Langston numerous motions he had prepared on a wide variety of issues which he wanted Langston to submit to the court. Fourth, the probation revocation hearing gave Meyer a very good understanding of the case. Indeed, Meyer claims that this procedure was so similar to a trial that the actual trial should be seen as a violation of the double jeopardy violation.

One other major factor leading us to the conclusion that there was no violation of the right to counsel is the fact that the record indicates that Meyer's actions in moving for replacement counsel midway through the trial were largely obstructionist. Numerous facts lead us to this conclusion. For example, although Meyer had actually prepared the motion to replace Langston prior to trial, it was not until after the state had presented overwhelming evidence of his guilt that he chose to file the motion. This evidence included eyewitness testimony from the two victim's of the robbery that they were "absolutely positive" that Meyer was the person who had robbed them at gunpoint.

Meyer's assertion that he only realized Langston's inadequacies at this point is simply unbelievable. The record shows that Langston's representation at the trial was not significantly different from his conduct at the probation revocation hearing. Thus, there was no surprise involved whatsoever. Our conclusion that Meyer's motion was an obstructionist tactic is also supported by his use of his right to counsel as a delaying tactic prior to the trial and the probation revocation hearing.

Accordingly, we find that Meyer's right to counsel as guaranteed by the Constitu-

tion of the United States was not violated. The standards of basic fairness as laid down by this Court and the Supreme Court have been met. *See, United States v. Schmitt,* 784 F.2d 880 (8th Cir.1986); *United States v. Pilla,* 550 F.2d 1085 (8th Cir. 1977), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977); *LaPlante v. Wolff,* 505 F.2d 780 (8th Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1436, 43 L.Ed.2d 678 (1975). On this point it should also be noted that although Langston played only a passive stand-by role while Meyer was presenting his defense to the jury, Langston did take an active role in sidebar and post-trial conferences.

Our holding, that a specific on the record warning of the dangers and disadvantages of self-representation is not an absolute necessity in every case for a valid waiver of counsel, should in no way be interpreted as any indication that we disfavor such a policy. Exactly the opposite is true. At best, requiring appellate courts to search through voluminous records for evidence of knowledge of this type is a time-consuming effort and a waste of judicial resources. It is a waste of judicial resources not because it is a frivolous inquiry, but because it could be avoided with a relatively short and simple colloquy on the record. Indeed, such a practice would be better for all parties involved because it would both help prevent error, and it would make frivolous appeals easier to dispose of. Thus, we are hopeful that all courts will voluntarily pursue this practice and that government prosecutors will see the benefit in encouraging courts with other practices to change them.

■ The final issue facing this Court deals with the issue of the effectiveness of appellant's appellate counsel. Appellant contends that he was prejudiced by his counsel's alleged ineffectiveness because she failed to raise several pertinent issues on appeal, namely the waiver of counsel issue and the double jeopardy issue. We find this argument to be without merit because, as we have noted above, none of the issues which counsel failed to raise on appeal were meritorious. Accordingly, as there was no prejudice, Meyer is entitled to

no relief on ineffective assistance of counsel grounds. *See, Strickland,* 466 U.S. 668, 104 S.Ct. 2052.

Appellant's contention that he did suffer prejudice because his conviction would have been reversed by the Arkansas courts on state constitutional issues if properly appealed, regardless of his rights under federal law, is also unpersuasive. Appellant bases this argument on the allegation that under Arkansas law a specific warning of the dangers and disadvantages of self-representation on the record is required in every circumstance for effective waiver. The case law does not support this argument. Instead, the Arkansas courts have held that "[w]hile it might be better for the record to contain an express warning by the court of the disadvantages of self representation in order to establish that the accused knows what he is doing and his choice is made with his eyes open," such a warning is not required if the particular facts and circumstances of a case show that the defendant had full knowledge or adequate warning concerning his rights. *Barnes v. State,* 15 Ark.App. 153, 691 S.W. 2d 178, 181 (1985). Additionally, it must be noted that the Arkansas Supreme Court found appellant's Rule 37 petition, in which appellant did raise the issue of his assistance of counsel at trial, to be without substantiation. Accordingly, our deference to state courts on state law issues requires us to decline to award appellant relief on this state law issue.

Accordingly, we affirm the decision of the district court denying the petition for habeas corpus.