United States Court of Appeals

For the Eighth Circuit

_____

No. 15-2319

_____

Michael Fiorito

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 16, 2016
Filed: May 3, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Michael Fiorito pleaded guilty to one count of mail fraud. While awaiting sentencing and against the advice of counsel, Fiorito filed several letters requesting to withdraw his guilty plea. The district court[1] granted Fiorito's request and released

_____

[1]The Honorable Paul A. Magnuson, United States District Court for the District of Minnesota. As discussed below, Judge Magnuson subsequently recused, and the

him from the plea agreement. Fiorito proceeded to trial and was convicted. He filed a motion collaterally attacking his conviction pursuant to 28 U.S.C. § 2255, arguing, *inter alia*, that the district court violated his Sixth Amendment right to counsel by considering and granting his *pro se* request to withdraw his guilty plea without first conducting a hearing under *Faretta v. California*, 422 U.S. 806 (1975). The district court rejected Fiorito's claims but granted a certificate of appealability on the following question: "Was Fiorito deprived of his Sixth Amendment right to counsel when [the district court] granted Fiorito's *pro se* request to withdraw his guilty plea?" We hold that he was not, and we therefore affirm.

I.

In June 2007, a grand jury indicted Fiorito for three counts of mail fraud and one count of conspiracy to commit mail fraud. The case was assigned to Judge Magnuson.

After extensive negotiations with his counsel, the Government presented Fiorito with two alternative plea offers: a "determinate deal" and an "indeterminate deal." Under either, Fiorito would plead guilty to one count of mail fraud and the remaining counts would be dismissed. In addition, the Government would recommend a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1 if Fiorito "fully acknowledge[d] complete responsibility for the offense of conviction and all relevant conduct." Beyond these common features, however, the plea offers differed significantly.

Under the determinate offer, the parties would not dispute the application of the sentencing guidelines. Instead, Fiorito would stipulate to a guidelines range of 100-

---

case was assigned to the Honorable Patrick J. Schiltz, United States District Court for the District of Minnesota.

125 months, and the Government would recommend a sentence of 100 months' imprisonment. The indeterminate offer, in contrast, permitted Fiorito to object to assertions in the presentence investigation report ("PSR") regarding his conduct and the application of the guidelines. Under this offer, the Government could attempt to show at the sentencing hearing that Fiorito's offense level under the guidelines was significantly higher than the offense level stipulated under the determinate offer. Against the advice of counsel, Fiorito chose the indeterminate offer.

After Fiorito pleaded guilty, the probation office issued a PSR that included a two-level enhancement for obstruction of justice, proposed no reduction for acceptance of responsibility, and calculated a guidelines range of 151-188 months' imprisonment. Fiorito objected to virtually all the factual assertions and guidelines calculations in the PSR. The district court scheduled an evidentiary hearing regarding these disputes.

In an attempt to avoid an extensive evidentiary hearing, the Government extended an offer to resolve the PSR disputes under conditions similar to the determinate offer Fiorito had earlier rejected. Specifically, the Government offered "to enter into a supplemental stipulation" in which the parties would recommend a sentence of 100 months' imprisonment. In addition, the Government would recommend that this sentence be served concurrently with a 120-month term of imprisonment that Fiorito already was serving as a result of an unrelated state conviction. If Fiorito did not accept this offer, the Government warned that it would ask the court to impose a consecutive sentence at the top of the applicable guidelines range.

Fiorito regarded the Government's ultimatum as a breach of the plea agreement. The Government denied that it was in breach, noting that the agreement required the Government to recommend the acceptance-of-responsibility reduction only if Fiorito "fully acknowledge[d] complete responsibility for the offense of conviction and all

relevant conduct." The Government contended that it had the right to refuse to recommend the reduction under the indeterminate agreement because Fiorito, in his objections to the PSR, denied that he had committed any of the conduct alleged in the indictment.

Fiorito, his counsel, and the Government contacted the district court numerous times about this dispute. Fiorito's counsel filed a motion seeking to enforce the plea agreement or, in the alternative, to withdraw the guilty plea. That same day, Fiorito wrote a letter to the district court requesting to withdraw his plea due to the Government's breach. The Government responded and urged the court to let Fiorito withdraw his plea because he denied engaging in any of the conduct charged in the indictment.

Before the district court could respond to any of these documents, Fiorito's counsel filed a motion to withdraw the previous motions to withdraw Fiorito's guilty plea. However, this motion reiterated Fiorito's position that the Government was breaching the plea agreement and sought enforcement of it. The Government denied that it was in violation of the agreement but again urged the court to allow Fiorito to withdraw his guilty plea. The district court denied the motion to enforce, noting that the Government had not violated the agreement. In its order, the court warned that if Fiorito continued to deny responsibility, the court would "*sua sponte* reject the Plea Agreement and order [Fiorito] to stand trial."

The next day, Fiorito wrote a second letter to the district court requesting to withdraw his guilty plea, and the Government again agreed that Fiorito should be allowed to do so. Several weeks later, Fiorito sent a third letter to the court requesting to withdraw his guilty plea. After receiving the third letter, the district court requested that Fiorito's counsel write a letter explaining the situation. Fiorito's counsel reported that their relationship had become strained and that Fiorito had instructed him to file another motion to withdraw on the ground that his initial decision to plead guilty had

been the result of a miscommunication regarding the plea agreement. Counsel refused to file that motion, however, because he did not believe that there had been any miscommunication.

Without conducting a hearing, the district court granted Fiorito's request to withdraw his guilty plea. In its order, the court stated:

> It appears to the Court that [Fiorito] is asserting that he is innocent of the crimes charged in the Indictment. Moreover, the Government has agreed that [he] should be permitted to withdraw his guilty plea and the case should go to trial. Thus . . . the Court finds that [he] has established the requisite "fair and just reason" to withdraw his plea of guilty.

The following day, Judge Magnuson recused from the case, and the case was assigned to Judge Schiltz.

Several months after withdrawing his guilty plea, Fiorito wrote to the court and asked the court to appoint new counsel or, in the alternative, to permit him to proceed *pro se*. After conducting a *Faretta* hearing, the district court granted Fiorito's request to proceed *pro se* and appointed his lawyer as standby counsel.

Fiorito represented himself at trial and was convicted on all counts. The district court sentenced him to 270 months' imprisonment, imposed consecutively to his state sentence. We affirmed his conviction and sentence on direct appeal. *United States v. Fiorito*, 640 F.3d 338, 353 (8th Cir. 2011).

Fiorito filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, raising seventeen grounds for relief. After a four-day evidentiary hearing, the district court denied Fiorito's motion.

II.

Fiorito argues that he was deprived of his Sixth Amendment right to counsel because Judge Magnuson allowed him to withdraw his guilty plea, without a hearing and against the advice of counsel, on the basis of his *pro se* requests. We review for clear error the district court's findings of fact following an evidentiary hearing held on a § 2255 motion. *Laird v. United States*, 987 F.2d 527, 529 (8th Cir. 1993). We review *de novo* the ultimate conclusion of whether the defendant's Sixth Amendment rights were violated. *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013).[2]

The Sixth Amendment protects a defendant's right to counsel at all "'critical stages' in the criminal justice process." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). It also protects a defendant's right to waive his right to counsel and to represent himself. *Faretta*, 422 U.S. at 835-36. Because a defendant exercising his right to represent himself "necessarily relinquishes the usual benefits associated with the right to counsel," he must make a knowing and intelligent waiver. *United States v. Yagow*, 953 F.2d 427, 430 (8th Cir. 1992). A waiver is undertaken knowingly and intelligently where a defendant is "made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forego the aid of counsel." *Bumgarner v. Lockhart*, 920 F.2d 510, 512 (8th Cir. 1990) (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988)). The purpose of conducting a *Faretta* hearing is to ensure that a defendant's waiver is knowing and intelligent by warning the defendant "of the dangers and disadvantages of self-representation." *Bilauski v. Steele*, 754 F.3d 519, 522 (8th Cir.), *cert. denied*, 574 U.S. ---, 135 S. Ct. 294 (2014) (quoting *Faretta*, 422 U.S. at 835).

---

[2]On appeal, the Government argues that this claim is procedurally barred because Fiorito did not raise the claim on direct appeal. *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). However, procedural default is an affirmative defense, which the Government waived when it failed to raise the issue in the district court. *See United States v. Brewer*, 766 F.3d 884, 887 n.2 (8th Cir. 2014).

A defendant does not have a constitutional right "to simultaneously proceed pro se *and* with the benefit of counsel." *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994) (emphasis added). However, district courts have discretion to permit "hybrid representation" arrangements whereby a defendant takes over some functions of counsel despite being represented. *United States v. Summage*, 575 F.3d 864, 876 (8th Cir. 2009). The district court concluded that Fiorito had proceeded under a hybrid representation scheme when he contacted Judge Magnuson directly to request to withdraw his plea despite being represented by counsel.

Such hybrid representation arrangements create significant problems in analyzing the issue of waiver of counsel. Where a defendant seeks to represent himself entirely without a lawyer, he must knowingly and intelligently waive his right to counsel. *Faretta*, 422 U.S. at 835. However, courts of appeals analyzing hybrid representation arrangements have disagreed as to when a defendant's conduct triggers the waiver of his right to counsel. *Compare United States v. Leggett*, 81 F.3d 220, 224 (D.C. Cir. 1996) (holding that defendant in hybrid representation arrangement does not waive his right to counsel unless he makes "an articulate and unmistakable demand . . . to proceed *pro se*") *with United States v. Turnbull*, 888 F.2d 636, 638 (9th Cir. 1989) (holding that defendant must knowingly and intelligently waive his right to counsel before he assumes any of the "core functions" of counsel). Further, courts that have held that a waiver is necessary for hybrid representation have disagreed about what procedures are required before a defendant's waiver is knowing and intelligent. While some courts have required *Faretta* warnings any time a hybrid-represented defendant waives his right to counsel, *see, e.g.*, *United States v. Davis*, 269 F.3d 514, 518-20 (5th Cir. 2001), we have held that such warnings are not required when "the defendant had the required knowledge [about the dangers of proceeding *pro se*] from other sources." *Yagow*, 953 F.2d at 431.

This brings us to Fiorito's claim. He asserts that withdrawing a guilty plea is a "critical stage" of the proceedings and that moving to withdraw a plea constitutes

a "core function" of counsel. Therefore, despite retaining counsel, Fiorito argues that the district court permitted him to waive his right to counsel by ruling on his *pro se* letter requesting to withdraw his plea. Fiorito claims that the court was required to hold a *Faretta* hearing before granting his requests to ensure that his purported waiver of counsel was knowing and intelligent. According to Fiorito, because the court erred by failing to hold this hearing to warn him about the dangers of proceeding *pro se*, he was deprived of his Sixth Amendment right to counsel and must be returned to the position he would have been in had no such deprivation occurred.[3]

We reject two premises that Fiorito relies upon for his argument. First, the mere fact that the district court considered Fiorito's letters requesting to withdraw his guilty plea did not necessarily render him unrepresented. Fiorito was represented by counsel, who repeatedly advised him not to withdraw his guilty plea. Fiorito made the personal decision to ignore this advice and withdraw his guilty plea; as the defendant, he maintained the "ultimate authority to make certain fundamental decisions regarding the case," including whether to plead guilty. *See Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999) (distinguishing between "personal" decisions, which a defendant must make, and "strategic" or "tactical" decisions, which counsel can make without a defendant's consent). Because Fiorito was represented by counsel and received counsel's advice, he did not waive his right to counsel, and the district court had no duty to conduct a *Faretta* hearing. *See Stano v. Dugger*, 921 F.2d 1125, 1147 (11th Cir. 1991) (rejecting claim that defendant was entitled to *Faretta* warnings when he pleaded guilty against the advice of counsel); *United States v. Pouport*, 565 F. App'x 53, 55 (2d Cir. 2014) (holding that defendant

---

[3]Fiorito argues that he was deprived of his right to counsel only at the plea withdrawal stage, not at trial. The district court held a *Faretta* hearing before allowing Fiorito to proceed *pro se* at trial to ensure that he knowingly and intelligently waived his right to trial counsel.

did not waive his right to counsel by filing and litigating a *pro se* motion to withdraw his guilty plea because his counsel continued to represent him for all other purposes).

Second, Fiorito's argument fails even if we assume that he was unrepresented and proceeded *pro se* when he sought to withdraw his guilty plea. The remaining flaw in Fiorito's argument is his assertion that a *Faretta* hearing is always required when a defendant waives his right to counsel. The Supreme Court has rejected the bright line rule Fiorito advances:

> [W]e have taken a more pragmatic approach to the waiver question—asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized.

*Patterson v. Illinois*, 487 U.S. 285, 298 (1988). The stage of the proceedings thus affects the type of advisement necessary to make a waiver valid. The Court has required more rigorous warnings about the usefulness of counsel when a defendant "require[s] aid in coping with legal problems or assistance in meeting his adversary." *United States v. Ash*, 413 U.S. 300, 313 (1973). At one end of the spectrum, the Supreme Court has held that a defendant who spoke with police officers after being indicted had knowingly and intelligently waived his right to counsel for purposes of post-indictment questioning because he received *Miranda* warnings before being questioned. *Patterson*, 487 U.S. at 298-99. At the other end, the Court has required trial courts to convey detailed warnings about the disadvantages of proceeding *pro se* before allowing a defendant to waive his right to counsel at trial. *Faretta*, 422 U.S. at 835-36. "The information a defendant must possess in order to make an intelligent election [to proceed without counsel] . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily

grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Every court of appeals that has considered the question has concluded that a plea withdrawal hearing is a "critical stage" of the proceedings. *Hines v. Miller*, 318 F.3d 157, 167 (2d Cir. 2003) (Winter, J., dissenting) (collecting cases). However, these cases all involve appeals from the *denial* of the defendants' *pro se* motions to withdraw their guilty pleas. *See, e.g.*, *United States v. Joslin*, 434 F.2d 526, 529-30 (D.C. Cir. 1970). And the courts analyzing waiver in this context have focused on the importance of having counsel assist the defendant during a plea-withdrawal hearing. *See, e.g.*, *United States v. Vigil*, 605 F. App'x 757, 762 (10th Cir. 2015) ("At the plea-withdrawal hearing, a defendant can benefit from counsel because the attorney would understand how to navigate the substantive and procedural challenges, such as the grounds for withdrawal and the examination and cross-examination of witnesses.").

Here, Fiorito did not need assistance from counsel—or a warning from the court about the dangers of proceeding without counsel—in litigating an adversarial hearing on his request to withdraw. The Government agreed that Fiorito should be allowed to withdraw his guilty plea, and the court's decision to grant the motion without an evidentiary hearing obviated the need to warn Fiorito about the difficulty of representing himself at such a hearing. Fiorito thus cannot "articulate with precision what additional information should have been provided to him before he would have been competent to waive his right to counsel" for purposes of convincing the court to grant his motion to withdraw his plea. *See Patterson*, 487 U.S. at 294.[4]

_____

[4]Fiorito claims that his success in moving to withdraw is irrelevant because "structural errors" violating the Sixth Amendment are not subject to harmless error review. This argument puts the cart before the horse. We do not apply harmless error here. Instead, we consider the success of Fiorito's efforts—and the absence of a hearing requiring assistance from counsel—only to determine whether a Sixth Amendment violation occurred in the first place. *See Patterson*, 487 U.S. at 298

-10-

Although he did not need assistance from counsel in litigating his request to withdraw his plea, Fiorito argues that he was deprived of his right to counsel because he was not sufficiently informed about whether he should have attempted to withdraw his guilty plea in the first place. According to Fiorito, he was not aware of the significantly higher penalties he might face if he proceeded to trial. Had the district court conducted a *Faretta* hearing before considering his request, Fiorito argues, the court could have ensured that he knew of the potential sentencing range and also understood the danger of making a plea decision without the advice of counsel.

Fiorito's argument fails. We will uphold a waiver of counsel absent specific warnings when "the record as a whole demonstrates 'that the defendant knew and understood the disadvantages of self-representation.'" *United States v. Crawford*, 487 F.3d 1101, 1105-06 (8th Cir. 2007) (quoting *United States v. Stewart*, 20 F.3d 911, 917 (8th Cir. 1994)). The record clearly shows that Fiorito's alleged waiver was knowing and intelligent. First, Fiorito understood his right to counsel. At his original plea hearing, where he pleaded guilty, Fiorito confirmed that he understood his right to be represented by a lawyer at every stage of the proceedings. *See Meyer*, 854 F.2d at 1114-15 (relying on instruction from probation revocation hearing to find that defendant understood his right to counsel); *United States v. Willie*, 941 F.2d 1384, 1389 (10th Cir. 1991) (relying on defendant's arraignment to find that waiver was valid).

Second, the record from Fiorito's four-day evidentiary hearing on his § 2255 motion shows that he understood the danger of abandoning his plea agreement. His lawyer repeatedly advised him against withdrawing his plea and warned him that he would receive a substantially longer sentence if he went to trial. Even if his counsel did not inform Fiorito of the precise sentencing range applicable absent the guilty

(holding that procedures required to ensure valid waiver will vary based on "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage").

plea, the circumstances show that Fiorito had sufficient knowledge to make an informed choice whether to withdraw his plea. *See United States v. Turner*, 644 F.3d 713, 721-22 (8th Cir. 2011) (holding that waiver was valid even though defendant was not warned about statutory range of charged offenses). As the district court found:

> Fiorito was undoubtedly aware—with some degree of specificity—of the risks he faced. Fiorito is very smart; he gets into trouble because he lacks self control, not because he lacks intelligence. Fiorito is also the most legally savvy non-lawyer who has appeared before this Court. Time and again, he has proven himself capable of researching, understanding, and arguing sophisticated legal issues, and (as noted) he reviews every jot and tittle of every document relevant to his case.

*See Bumgarner*, 920 F.2d at 512-13 & n.4 (considering defendant's knowledge of the proceedings to support conclusion that defendant understood the dangers of self-representation). Thus, even if he waived his right to counsel, we conclude that Fiorito did so knowingly and intelligently. *See Meyer*, 854 F.2d at 1114-15 (holding that waiver of trial counsel was knowing and intelligent, despite lack of *Faretta* warnings, where defendant understood his right to counsel and knew of the dangers of self-representation).

Fiorito also faults the district court for "failing to inquire about the breakdown in the attorney-client relationship and the conflict between counsel and client." He argues that this conflict of interest stemmed from his counsel's failure to inform him properly about the plea agreement. The plea agreement was structured to (1) allow Fiorito to contest many of the facts alleged by the Government, and (2) require the Government to recommend a three-level reduction for acceptance of responsibility if Fiorito "fully acknowledge[d] complete responsibility for the offense of conviction and all relevant conduct." Fiorito argues that these benefits were mutually exclusive because his denial of many of the Government's allegations allowed the Government to refuse to recommend the acceptance-of-responsibility reduction. According to Fiorito, his counsel provided ineffective assistance by failing to warn him that he

could not contest the Government's allegations while simultaneously demanding a reduction for acceptance of responsibility. And because his attempt to withdraw his guilty plea was based in part on this allegation of inadequate representation, Fiorito asserts that his counsel had an actual conflict of interest such that the court was required to conduct a hearing regarding this conflict.

We disagree. Fiorito did not move for appointment of new counsel until several months after he withdrew his guilty plea, and his complaints about counsel in his letters to Judge Magnuson did not warrant further inquiry from the court. We agree with the district court that these letters did not indicate a conflict of interest, and we therefore reject Fiorito's claim that Judge Magnuson erred by failing to investigate Fiorito's relationship with his counsel. *See United States v. Davidson*, 195 F.3d 402, 407 (8th Cir. 1999) ("There is no obligation on a trial court to look into a defendant's representation unless it becomes aware of circumstances that would require further investigation.").

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____