# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1862
_____

Jon Henry Sweeney

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2014
Filed: September 8, 2014

_____

Before LOKEN, BRIGHT, and GRUENDER, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Jon Sweeney (Sweeney) in this post-conviction proceeding seeks relief from his underlying criminal conviction relating to the unauthorized interception of cable service and illegal currency structuring for which he is serving 70 months (5 years, 10 months) imprisonment. Sweeney argues that his Sixth Amendment right to counsel was violated when his attorney left the courtroom, with the permission of the

district court,[1] to go to the bathroom during the government's direct examination of a co-conspirator. The district court recognized that the departure violated Sweeney's Sixth Amendment right to counsel but ruled that the violation was harmless error and denied Sweeney's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

The district court granted a certificate of appealability for Sweeney on the following question: "Is the actual absence of counsel from trial for a brief period of time during the direct testimony of a government witness subject to harmless-error analysis?" Sweeney appeals on this narrow issue and argues that counsel's absence amounted to a structural defect requiring a presumption of prejudice that precludes any need for harmless-error analysis. The Government contends that the absence amounted to a trial error subject to harmless-error analysis and that the record shows Sweeney was not prejudiced by his attorney's absence.

Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

The details of the underlying criminal case are discussed at length in *United States v. Sweeney*, 611 F.3d 459 (8th Cir. 2010). In short, a federal grand jury charged Sweeney and his wife, Michelle, with several counts related to the unauthorized interception of cable service and illegal currency structuring stemming from their ownership and operation of Micro-Star Technology ("Micro-Star"). *Id.* at 463. Micro-Star manufactured cable television descramblers and other cable television equipment that would permit users of the devices to obtain and view cable programming without paying for it. *Id.* at 463. During a 13-day trial that spans

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

roughly 2,500 transcript pages, the Sweeneys presented a joint defense strategy that manufacturing, possessing, and selling Micro-Star's products was not illegal unless the Sweeneys had intended that the devices be used to steal cable television or satellite television, which the Sweeneys argued the Government could not establish. *Id.* at 467.

A jury disagreed, convicting the Sweeneys on submitted charges of assisting in the unauthorized interception of cable signals, conspiracy to do so, and illegal currency structuring. *Id.* at 465. The district court sentenced Sweeney to 70 months (5 years, 10 months) imprisonment and a $150,000 fine, and sentenced his wife to 42 months (3 years, 6 months) imprisonment and a $125,000 fine. *Id.* at 466. The Sweeneys appealed their convictions and sentences, which this court affirmed on direct appeal. *Id.* at 477.

In October 2011, Jon Sweeney filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 alleging several claims of ineffective assistance of counsel. The district court rejected each of those claims and the only issue before this court pertains to Sweeney's allegation that his Sixth Amendment right to counsel was violated when his attorney briefly left the courtroom to go to the bathroom during the direct examination of Daniel Quade, a named co-conspirator in the indictment who had pleaded guilty.[2] According to the trial transcript, Sweeney's counsel obtained permission from the district court—but not his client—to leave. He returned in time to appear on the record six transcript pages later.

Following an evidentiary hearing, during which the Sweeneys and their respective attorneys testified, the district court concluded that although Sweeney's

---

[2] The alleged error of absence of counsel did not affect Michelle Sweeney, who retained separate counsel. She did not appeal the district court's denial of her motion for post-conviction relief.

Sixth Amendment right to counsel was violated during his counsel's brief absence, harmless-error analysis applied, and the violation was harmless beyond a reasonable doubt. Sweeney appeals.

## II. Discussion

The certificate of appealability required the district court and this court on review to answer the question of whether or not the absence of counsel from trial for a brief period of time during the direct testimony of a government witness is subject to harmless-error analysis. Reviewing the decision of the district court de novo, *Espinoza v. United States*, 745 F.3d 943, 945 (8th Cir. 2014), we consider only this narrow question.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI. "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). However, prejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage of his trial. *United States v. Cronic*, 466 U.S. 648, 659 (1984). "[T]he trial is the paradigmatic critical stage." *United States v. Turner*, 975 F.2d 490, 496 (8th Cir. 1992).

Here, the parties agree that Sweeney's Sixth Amendment right to counsel was violated due to his counsel's brief absence during trial, but disagree as to the degree of that error and whether harmless-error analysis can apply in light of the Supreme Court's statement in *Cronic*. Sweeney argues that in light of *Cronic*, the error is a structural defect that is presumptively prejudicial and requires reversal. The Government contends that because of the brevity of Sweeney's counsel's absence, it

amounted to nothing more than a trial error subject to a harmless-error analysis. Accordingly, to answer the question of whether harmless-error analysis applies, we must first determine what type of violation occurred.

The Supreme Court has divided constitutional violations that occur during a criminal proceeding into two categories: trial errors and structural defects. *Arizona v. Fulminante*, 499 U.S. 279, 307-10 (1991); *see also Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993) (Rehnquist, C.J., concurring) (describing the two categories); *Chapman v. California*, 386 U.S. 18, 22-24 (1967) (fashioning a harmless-error rule). A "trial error" is an error that may "be quantitatively assessed in the context of other evidence presented," and is subject to harmless-error analysis. *Fulminante*, 499 U.S. at 307-08. A "structural defect" is something that "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and thus "def[ies] analysis by 'harmless-error' standards." *Id.* at 309-10. The Supreme Court has recognized that "most constitutional errors can be harmless," *id.* at 306, and that structural defects "are the exception and not the rule." *Rose v. Clark*, 478 U.S. 570, 578-79 (1986); *see Fulminante*, 499 U.S. at 306-07, 309-10 (listing examples of trial errors and structural defects); *see also Sullivan*, 508 U.S. at 282 (Rehnquist, C.J., concurring) (stating that there is a "'strong presumption' that any error will fall into the first of these categories" and "it is the rare case in which a constitutional violation will not be subject to harmless-error analysis." (internal citations omitted)). Only structural defects that undermine "the fairness of a criminal proceeding as a whole . . . require[] reversal without regard to the mistake's effect on the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (citing *Fulminante*, 499 U.S. at 309-10).

Sweeney argues that the Supreme Court's 1984 decision in *Cronic* precludes harmless-error analysis. In *Cronic*, the Supreme Court stated that prejudice may be presumed when the defendant experiences a "*complete* denial of counsel" at a critical stage of trial. 466 U.S. at 659 (emphasis added). According to *Cronic*, such

presumption is required "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.* at 662.

The Supreme Court subsequently has stated that only those "Sixth Amendment violations that *pervade the entire proceeding*" can "never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (emphasis added) (applying harmless-error analysis to the denial of counsel prior to a psychiatrist's examination of a capital murder defendant, which is considered a critical stage). Sweeney's counsel's brief absence was not a "complete" absence because it only lasted three minutes. Although the absence occurred at a "critical stage," the brevity of the absence distinguishes this case from the "*complete* denial of counsel" discussed in *Cronic*. *See* 466 U.S. at 659 (emphasis added). Moreover, several of our sister circuits have stated post-*Cronic* that, under some circumstances, harmless-error analysis may apply for an absence of counsel at a critical stage.[3]

---

[3] *See, e.g.*, *United States v. Kaid*, 502 F.3d 43, 45, 47 (2d Cir. 2007) (per curiam) (concluding that counsel's twenty-minute absence from the courtroom during a testimonial phase of a criminal trial did not constitute ineffective assistance of counsel because the appellant could not establish prejudice); *Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007) ("A denial of counsel at any critical stage at which the right to counsel attaches does not require a presumption of prejudice. Rather, a presumption of prejudice applies only in cases where the denial of counsel would necessarily undermine the reliability of the entire criminal proceeding."); *United States v. Owen*, 407 F.3d 222, 226 (4th Cir. 2005) ("[H]armless-error analysis applies to the denial of the Sixth Amendment right to counsel at all stages of the criminal process, except for those where such denial 'affects and contaminates' the entire subsequent proceeding."); *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001) (concluding that a defendant had been denied counsel at a critical stage and stating, "[t]he next step of our analysis is to ask whether this constitutional violation is 'harmless error'"); *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998) (concluding attorney's decision to leave the courtroom due to an illness did not violate client's Sixth Amendment right to counsel at an evidentiary hearing on a new

Here, the district court, largely relying on *Fulminante*, 499 U.S. at 307-10, concluded that counsel's brief absence from the courtroom constituted trial error and not a structural defect. We agree. As the district court stated:

> There is a fundamental difference between a total denial of counsel—which pervades the entire proceeding and makes it impossible to gauge how the assistance of counsel might have made a difference—and an attorney's momentary absence during a lengthy trial in which the attorney otherwise fully and actively participated.

The district court continued:

> While the Court would not go so far as to call six pages' worth of trial testimony "de minimis," the Court believes that it is abundantly clear that [Sweeney's counsel's] brief absence did not pervade or contaminate the entire trial or affect the framework in which the trial proceeded. [Sweeney's counsel] was gone for about 3 minutes of a 13-day trial—or, put differently, during less than 6 pages of a trial record that spans over 2,500 pages. The fact that the record demonstrates precisely what [Sweeney's counsel] missed while he was out of the room—and the fact that his absence was so brief—allows the Court to confidently assess whether Sweeney was harmed by [his counsel's] absence. Indeed, the Court is far better equipped to conduct a harmless-error analysis in this case than it is in other contexts, in which a substantial amount of speculation is unavoidable.

The district court further noted that the testimony taken during Sweeney's counsel's absence did not reveal anything disputed or unknown to defense counsel well before trial and, despite his absence, Sweeney's counsel's cross-examination of Quade "was extensive and effective" and obtained answers that supported the defense theory that no conspiracy existed. Additionally, the brevity of the absence distinguishes the present case from the analysis in previous cases before this court relating to this issue

---

trial motion).

of the absence of counsel during the *entire* proceeding. *See Green v. United States*, 262 F.3d 715, 717-18 (8th Cir. 2001) (concluding that erroneous denial of counsel at § 2255 hearing is not subject to harmless-error analysis); *Turner*, 975 F.2d at 496 (presuming prejudice when counsel was gone for various parts of eight trial days but affirming because defendant's waiver of counsel was proper).

Accordingly, we agree with the district court's ruling that the constitutional violation in this case was subject to harmless-error analysis. Because the certificate of appealability in this case is limited to the question of whether harmless-error analysis applies, we do not address the district court's conclusion that the error was harmless beyond a reasonable doubt.

## III.  Conclusion

Accordingly, we affirm.

_____