# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1919
_____

United States of America

*Plaintiff - Appellee*

v.

Terrance T. Brown, also known as Terrence T. Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: March 13, 2020
Filed: April 13, 2020

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Terrance Brown appeals his conviction, arguing that the district court[1] denied him his right to counsel in violation of the Sixth Amendment of the United States Constitution. We affirm.

_____

[1]The Honorable Steven R. Bough, United States District Judge for the Western District of Missouri.

In September 2017, the Government filed a complaint alleging that Brown possessed a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A magistrate judge appointed the Office of the Federal Public Defender to represent Brown. He was subsequently indicted by a grand jury.

In December 2017, Brown filed a motion to remove his counsel, Ronna Holloman-Hughes. Brown argued that he was not "receiving proper and adequate communication, co-operation and/or representation in which to defend himself." He requested that the court appoint new counsel.

A magistrate judge[2] held a hearing on the motion. Brown explained that he and Holloman-Hughes had a "conflict of interest." When Holloman-Hughes declined to look at some motions he had drafted, he said he "cussed her ass out." Brown said that Holloman-Hughes had "cussed [him] out too." Though he said he could not adequately represent himself, he said he would proceed *pro se* if necessary. Judge Hays declined to appoint Brown new counsel and told Brown to take some time to think about whether he wanted to proceed *pro se*.

At a hearing the next week, Holloman-Hughes told the court that Brown had apologized to her and that he wanted her to continue representing him. Brown affirmed that Holloman-Hughes's statement was correct.

Holloman-Hughes then filed a motion to suppress. At the hearing for the motion on June 5, 2018, Brown stated that he did not feel Holloman-Hughes would adequately represent him because they had "been getting into it since day one." Brown stated that he wanted to proceed *pro se*. After thoroughly questioning and warning Brown about proceeding *pro se*, Judge Hays allowed him to do so. Brown then withdrew the motion to suppress, stating he would file his own *pro se* motion.

---

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

Judge Hays directed Holloman-Hughes to appear as standby counsel at Brown's motion to suppress hearing and at trial.

On July 27, Brown filed a motion requesting an extension of time to file his pretrial motions. He also asked the court to reconsider the appointment of counsel because he might seek a competency evaluation. At a status conference on August 28, Judge Hays questioned Brown about his motions and scheduled a hearing date for Brown's motion to suppress.

At the motion to suppress hearing on September 10, Brown cross-examined the Government's first witness. After a recess, Brown told Judge Hays that he wanted his standby counsel to represent him. Holloman-Hughes then finished the cross-examination of the first witness. The hearing was continued so Holloman-Hughes could prepare for the remaining witnesses. Judge Hays recommended that the district court deny the motion to suppress, a recommendation the district court ultimately adopted.

The case proceeded to trial, with Holloman-Hughes representing Brown, and the jury returned a guilty verdict. The district court sentenced Brown to 120 months' imprisonment.

Brown appeals, arguing that he was denied his Sixth Amendment right to counsel during a critical stage of the proceedings. We review *de novo* whether Brown's Sixth Amendment rights were violated, *Fiorito v. United States*, 821 F.3d 999, 1003 (8th Cir. 2016), and whether he waived his right to counsel, *United States v. Conklin*, 835 F.3d 800, 802 (8th Cir. 2016).

"The Sixth Amendment protects a defendant's right to counsel at all critical stages in the criminal justice process." *Fiorito*, 821 F.3d at 1003 (internal quotation marks omitted). "It also protects a defendant's right to waive his right to counsel and to represent himself." *Id.* A defendant must assert his right to self-

representation "clearly and unequivocally." *See Bilauski v. Steele*, 754 F.3d 519, 522 (8th Cir. 2014).

Here, Brown clearly and unequivocally asserted his right to self-representation on June 5, the date of the hearing for the motion to suppress filed by Holloman-Hughes. At the hearing, Brown stated that he did not feel Holloman-Hughes would adequately represent him because they had "been getting into it since day one." Brown said, "I'd rather not let her defend me. . . . I'd rather defend myself." He later said, "I'm saying that I ain't got to have her defending me. . . . I'd rather defend myself." *See United States v. LeBeau*, 867 F.3d 960, 974 (8th Cir. 2017) ("[A] criminal defendant must do no more than state his request to proceed pro se, either orally or in writing, unambiguously to the court so that no reasonable person can say the request was not made." (internal quotation marks omitted)).

Where the defendant makes a clear and unequivocal request, a "hearing must follow to ensure the defendant is knowingly and intelligently waiving counsel and to inform the defendant of the dangers and disadvantages of self-representation." *Bilauski*, 754 F.3d at 522 (internal quotation marks omitted). After Brown clearly and unequivocally asserted his right to self-representation, Judge Hays questioned Brown about his past education, training in the law, and familiarity with the Federal Rules of Criminal Procedure and Federal Rules of Evidence. Brown said he was familiar enough with the Federal Rules of Criminal Procedure to defend himself. He also stated that he had taken an illegal search and seizure class and that he was familiar with the federal sentencing guidelines.

Judge Hays explained to Brown that he would need to follow the Federal Rules of Criminal Procedure and Federal Rules of Evidence. Judge Hays also told Brown that if he elected to proceed *pro se*, he would not receive any help from either Judge Hays or the trial judge. Brown confirmed that he understood that Judge Hays thought it unwise for him to represent himself. Judge Hays asked Brown whether he wanted to proceed *pro se* despite this warning. Brown replied, "Yes, ma'am," and Judge Hays then allowed him to proceed *pro se*. Through this colloquy, Judge

Hays properly determined that Brown knowingly, intelligently, and voluntarily waived his right to counsel.

Brown nevertheless argues that even if he waived his right to counsel on June 5, he "informed the court of his desire for counsel shortly thereafter" when he filed his motion on July 27 asking the court to reconsider appointment of counsel because he might seek a competency evaluation. *See Brown v. Wainwright*, 665 F.2d 607, 611 (Former 5th Cir. 1982) ("Even if defendant requests to represent himself, however, the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether.").

When questioned about his motion at the status conference on August 28, Brown said he did not want a competency evaluation. Brown said that he was "not a scholar of law" and that he did need help, but he said he needed a lawyer who would work with him because he said he knew his case "better than the lawyer." At that point, Judge Hays reminded Brown that if he wanted counsel, Holloman-Hughes could represent him, but she would not appoint different counsel, and she declined to revisit that conversation. Judge Hays explained to Brown, "Your choice is I can reappoint her to represent you in this matter or you can represent yourself." *See United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010) (explaining that a defendant must show "justifiable dissatisfaction with appointed counsel" to warrant substitution); *Oimen v. McCaughtry*, 130 F.3d 809, 811 (7th Cir. 1997) (stating that a defendant "does not have the right to appointed counsel of his choice"). Brown reiterated that he and Holloman-Hughes had a "conflict of interest." He also stated that he "didn't want to go *pro se*." Despite that statement, Judge Hays proceeded to schedule the motion to suppress hearing. After scheduling the hearing, Brown asked about the duties of standby counsel.

Even if we assume that Brown revoked his request to proceed *pro se* on July 27 when he filed his motion or on August 28 at the status conference, *but see Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir. 1989) ("Throughout the period before trial, Adams repeatedly indicated his desire to represent himself if the only alternative was

the appointment of Carroll. While his requests no doubt were *conditional*, they were not equivocal."), the error was harmless beyond a reasonable doubt.

In *Sweeney v. United States*, we explained that Sixth Amendment violations that do not "pervade the entire proceedings" do not amount to a structural defect and are not reversible if harmless beyond a reasonable doubt. 766 F.3d 857, 860-62 (8th Cir. 2014); *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (explaining that Sixth Amendment violations "that pervade the entire criminal proceeding" cannot be subject to harmless-error review); *see also Sweeney*, 766 F.3d at 860 ("A structural defect is something that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself and thus defies analysis by harmless-error standards." (internal quotation marks and brackets omitted)). In that case, defense counsel left to go to the bathroom during the Government's direct examination of a co-conspirator at trial. *Sweeney*, 766 F.3d at 858. The parties agreed the absence was a violation of the defendant's Sixth Amendment right to counsel. *Id*. at 860. We concluded that the brief absence of counsel was subject to harmless-error analysis.[3] *Id.* at 862.

Assuming Brown was denied his Sixth Amendment right to counsel from July 27 through the initial cross-examination of the first witness at the motion to suppress hearing on September 10, this denial did not "pervade the entire proceedings." Brown was without counsel during part of the examination of one witness at a motion to suppress hearing, not at trial, as in *Sweeney*. And unlike in *Sweeney*, Holloman-Hughes was present as standby counsel during the direct examination of the witness and Brown's partial cross-examination of the witness. *See Sweeney*, 766 F.3d at 861-62 (explaining that the testimony taken during counsel's absence "did not reveal anything disputed or unknown to defense counsel well before trial" and that, despite the absence, counsel's cross-examination was extensive and effective).

---

[3]We did not address whether the error was, in fact, harmless because the certificate of appealability was limited to the question of whether harmless-error analysis applied. *Sweeney*, 766 F.3d at 862.

Further, Judge Hays continued the suppression hearing so Holloman-Hughes had time to prepare adequately for the hearing after she was reappointed.

We thus consider whether any error was harmless beyond a reasonable doubt. As outlined above, Brown was without counsel during the direct examination of one witness at the motion to suppress hearing. After completing part of the cross-examination, Brown requested that Holloman-Hughes represent him, Judge Hays directed her to do so, she completed the cross-examination, and the hearing was rescheduled to allow Holloman-Hughes time to prepare. Brown points to no deficiencies in Holloman-Hughes's cross-examination of the first witness or her examination of the subsequent witnesses, nor does he argue that his motion to suppress would have been granted had Holloman-Hughes performed the initial cross-examination of the Government's witness. This brief absence of counsel, even if it amounted to a violation of Brown's Sixth Amendment right, was harmless beyond a reasonable doubt. *See United States v. Roy*, 855 F.3d 1133, 1189 (11th Cir. 2017) ("Because the Sixth Amendment violation that occurred during [the] trial was harmless beyond a reasonable doubt, [the] conviction is due to be affirmed.").

We affirm.

_____