

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85831 |
| | ) | |
| JAMES EUGENE LOGAN, | ) | Filed: September 12, 2023 |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County
The Honorable Stephanie M. Morrell, Judge**

**Before Division Two: Alok Ahuja, P.J., and
Anthony Rex Gabbert and Thomas N. Chapman, JJ.**

Following a bench trial in the Circuit Court of Boone County, James Logan was convicted of three misdemeanor offenses: first-degree trespass; fourth-degree assault; and peace disturbance. Logan appeals. He argues that his convictions should be reversed and the charges dismissed because appointed counsel was not present at his arraignment (at which time the court also made an initial bail determination), or at a subsequent bail review hearing. Logan also contends that the evidence was insufficient to support his convictions for first-degree trespass and peace disturbance. We affirm.

## Factual Background

The offenses occurred at a Mexican restaurant in Columbia.  The owner of the restaurant was waiting tables during the afternoon on August 17, 2022.  At that time, there were several customers seated outside on the restaurant's fenced-in patio area.  The patio was located in front of the restaurant; a guest would have to walk through the patio area to get inside the restaurant building.

The restaurant owner testified at trial that he saw Logan walking outside the business, interacting and "yelling with the customers."  The owner stated that they had had a problem with Logan before.  On the prior occasion Logan had also come to the restaurant and yelled at customers.  The owner had told Logan to leave and not come back, and had called the police to come and arrest him.

The restaurant owner testified that, when he saw Logan being obstreperous on August 17, 2022, he did not want to go outside because he knew Logan would start a fight with him.  The owner instead called 9-1-1.  When he first called 9-1-1, no one answered.  As he was preparing to call again, Logan saw the owner inside the restaurant and came towards him.  The owner held the restaurant's door shut to keep Logan from entering, while Logan tried to open it.  The owner testified that he was worried for the customers seated on the patio.  He told Logan to leave, which Logan refused to do.  The owner stated that Logan started fighting with him, and the owner's brother came out from the kitchen to help.

Logan took out a knife, and the restaurant owner grabbed a patio chair to shield himself.  Logan ran off down the street to hide, but then came walking back with rocks in his hand.  He was waiting at a business across the street and watching.

The restaurant owner called 9-1-1 again, and told the customers on the restaurant's patio to move inside. He then drove to the police station, approximately a block away. The owner testified that he did not walk because Logan was still waiting for him outside with rocks in his hand.

When the restaurant owner arrived at the police station, no officers were present. The owner spoke with an information specialist, and reported that Logan was following him and wanted to fight him. The information specialist testified that after the restaurant owner told her about the situation, she looked at a camera trained on the street and saw Logan walking to the police station. The information specialist testified that she had interacted with Logan before and was familiar with him. She testified that Logan was "gesturing like he wanted to fight," and so she locked the door to the lobby. She stated she was afraid for the restaurant owner's safety; it was her impression that Logan was pursuing him. Logan continued to yell and attempt to enter the police station.

A police officer subsequently arrived and spoke with the restaurant owner and information specialist. Logan was no longer present, but was arrested later.

The State charged Logan with three misdemeanors: the class A misdemeanor of peace disturbance, for unreasonably and physically obstructing the entrance and exit of the restaurant (Count I); the class B misdemeanor of trespass in the first degree, for knowingly remaining on the premises of the restaurant unlawfully (Count II); and the class C misdemeanor of assault in the fourth degree, for placing the restaurant owner in apprehension of immediate physical injury (Count III). Count I was charged as a class A rather than class B

misdemeanor because Logan had been convicted of peace disturbance in a prior case.

The circuit court initially declined to set a bond for Logan, based on its determination that Logan "is a danger to the victim and the community." Logan's initial court appearance was on August 18, 2022, during which he was arraigned. The court's docket entry memorializing Logan's arraignment states in part:

> The defendant appears in person in custody of Boone County jail via video without counsel. The defendant was informed of the misdemeanor charged, the right to retain counsel, the right to request the appointment of counsel if the defendant is unable to retain counsel, and the right to remain silent and that any statement made by the defendant may be used against the defendant. Pursuant to Rule 24.01, the defendant was arraigned and entered a plea of not guilty.

The court ordered a bond investigation. The docket entry also states: "Public Defender is appointed to determine eligibility." The court sent notice to the Public Defender's Office the same day.

On August 23, 2022, the court held a detention review hearing pursuant to Rule 33.05. The court's docket entry reflects that Logan appeared without counsel. The court ordered a bond of $10,000, cash or surety. On August 30, the court ordered a supplemental bond investigation to consider the potential of home detention.

On September 13, Logan appeared with counsel and was ordered to be released on his own recognizance, subject to specified conditions. Although the record does not reflect precisely when the Public Defender's representation of Logan commenced, a Special Public Defender entered his appearance on Logan's behalf on September 14, 2022. Logan was released from detention, on his own

4

recognizance, on September 16, 2022. His release was revoked on October 5 after he violated release conditions.

On October 24, 2022, Logan filed a motion to dismiss, arguing that his constitutional right to counsel was violated when he was not represented by appointed counsel at his arraignment, or at the detention review hearing held on August 23.

A bench trial was held on November 10, 2022. The court simultaneously tried Logan for the misdemeanors charged in this case, as well as those charged in another case (which is also on appeal to this Court in Case No. WD85830). Prior to the presentation of evidence, the court heard argument on Logan's motion to dismiss, and denied it.

At the conclusion of trial, the court found Logan guilty on Count I of peace disturbance as a class B rather than class A misdemeanor. The court also convicted Logan of first-degree trespass (Count II), and fourth-degree assault (Count III). On Count I, the court sentenced Logan to 120 days in the Boone County Jail. On Count II, the Court sentenced Logan to 180 days in jail, but suspended execution of the sentence and placed Logan on two years of unsupervised probation, contingent on his participating in a mental-health treatment program, and not returning to the restaurant. On Count III, the court sentenced Logan to fifteen days of jail time. All of the sentences were ordered to run consecutively to one another, and to Logan's sentence in the other case which was tried simultaneously.

Logan appeals.

## Discussion

In his first four Points, Logan argues that his convictions must be reversed because he was denied his constitutional right to counsel at his arraignment, and at his detention-review hearing. Logan's fifth and sixth Points argue that the evidence was insufficient to convict him of peace disturbance (Count I), and first-degree trespass (Count II).

## I.

Before addressing the merits of Logan's arguments, we address the State's contention that appellate jurisdiction is lacking because the record on appeal does not contain a written final judgment complying with the requirements of Rule 29.07(c).

In Missouri, "the right to appeal is purely statutory." *State v. Waters*, 597 S.W.3d 185, 186 (Mo. 2020) (citations omitted). In criminal cases, § 547.070[1] authorizes defendants to appeal "[i]n all cases of final judgment rendered upon any indictment or information." Similarly, Supreme Court Rule 30.01(a) specifies that the appeals authorized by law may be prosecuted "[a]fter the rendition of final judgment in a criminal case."

The Supreme Court has held that "a 'judgment in a criminal case is final "if the judgment disposes of all disputed issues in the case and leaves nothing for future adjudication."' 'Most often, the question of finality in a criminal case is determined by whether a sentence has been imposed.'" *State v. Vandergrift*, 669 S.W.3d 282, 288 (Mo. 2023) (quoting *Waters*, 597 S.W.3d at 187).

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2022 Cumulative Supplement.

In *Vandergrift*, the Supreme Court recently clarified that, for purposes of triggering a criminal defendant's right to appeal, "[a] final judgment is *rendered* when the circuit court orally announces the judgment and imposes sentence in the presence of the defendant." *Id.* at 289 (citing *State v. Vinson*, 87 S.W.2d 637, 639-40 (Mo. 1935); other citations omitted). The Court characterized the entry of a written judgment complying with Rule 29.07(c) as "a mere ministerial act," *id.*, and emphasized that the absence of a written judgment "does not deprive a court of appellate jurisdiction, but could support dismissal of an appeal on procedural grounds pursuant to Rule 30.14." *Id.*; *see also State v. Forbes*, No. SC99658, 2023 WL 4201542, at \*3-\*5 (Mo. June 27, 2023).

Therefore, even if the written judgment entered by the circuit court in this case failed to contain the information required by Rule 29.07(c), that would not defeat this Court's appellate jurisdiction. We conclude, in any event, that the judgment entered on the docket in this case satisfies Rule 29.07(c). Rule 29.07(c) provides that a final judgment in a criminal case "shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly." In this case, the entry on the docket recites, in substantial detail, the court's findings as to Logan's guilt on each of the charged offenses, and the sentences imposed on each charge.[2] While the docket entry does not

---

[2] The court's docket entry states:

**Defendant Sentenced**

After argument, motion to dismiss is denied and motion for interlocutory appeal is denied. A non-jury trial is held. The Court finds as to Count I: Court finds defendant not guilty as to the Class A misdemeanor of Peace Disturbance but does find defendant guilty of the lesser included

specifically recite Logan's pleas, the fact that he pleaded not guilty is noted elsewhere in the docket, and is fairly implied by the judgment entry's recitation that a bench trial was held on the charges. Moreover, in its Brief, the State explains that, although it cannot waive jurisdictional defects, it "would prefer that this Court rule on the merits" of Logan's appeal. In these circumstances, any technical defect by the circuit court in performing the "mere[ly] ministerial act" of entering a written judgment would not justify the dismissal of Logan's appeal. *Vandergrift* explains that entry of a written judgment is required so that the appellate court is not "left to speculate whether judgment was actually rendered and, if so, its terms and conditions," 669 S.W.3d at 291; those concerns are not implicated here.

We reject the State's contention that we lack appellate jurisdiction, and proceed to address the merits of Logan's arguments.

## II.

In Points I and II, Logan argues that his arraignment was a "critical stage" of his prosecution, and that the circuit court violated his constitutional right to

offense of the Class B Misdemeanor of Peace Disturbance; as to Count II: the Court finds the Defendant guilty of Trespass in the 1st degree. As to Count III: the Court finds the defendant guilty of Assault in the 4th Degree. Regarding sentencing: it is the Judgment of the Court that as to Count I: Defendant is sentenced to 120 days Boone County Jail said sentence is to run consecutive to Count II and III and consecutive to 22BA-CR03525. Defendant to be given credit for all time served. As to Count II: Defendant is sentenced to 180 days BCJ, suspended execution of sentence two years unsupervised probation on conditions that 1) defendant attend and complete [a] Mental Health program; 2) defendant not be on the premises of [the] Restaurant; and 3) defendant obey all laws and report all arrests or summons within 48 hours; and as to Count III: 15 days BCJ consecutive to Count I and Count II. Defendant is to be given credit for all time served and credit for 5 days in satisfaction of costs. SMM/XI (JB)

8

the assistance of counsel by proceeding with his arraignment without appointed counsel in attendance.

Logan claims that the court's failure to require the presence of appointed counsel at his arraignment violated Rule 31.02(a), which provides in part:

> In all criminal cases the defendant shall have the right to appear and defend in person and by counsel. If any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the court to appoint counsel to represent him.

As we recently explained in *State v. Woolery*, No. WD85530, 2023 WL 4188250 (Mo. App. W.D. June 27, 2023), Rule 31.02(a) "does not address arraignment nor does it require suspension of an initial appearance until counsel has been appointed. In fact, the rule expressly contemplates that a defendant may 'be without counsel upon his first appearance.'" 2023 WL 4188250 at *3. In this case, the court's docket entries reflect that the court gave Logan the advice required by Rule 31.02(a). The public defender's office was notified that Logan was in custody on the same day as his initial appearance (presumably on Logan's request for appointed counsel). Logan has failed to establish any violation of Rule 31.02(a).

Logan also argues that the lack of counsel at his arraignment violated his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution. "[T]he Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 606 (Mo. 2012) (citations

9

omitted).  The right to counsel extends to misdemeanors as well as felonies, where jail time is actually imposed.  *See Alabama v. Shelton*, 535 U.S. 654, 661-62 (2002); *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972).

The Supreme Court of the United States has defined a "critical stage" in various ways.  *See Gerstein v. Pugh*, 420 U.S. 103, 122 (1975) (critical stages include "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel"); *Maine v. Moulton*, 474 U.S. 159, 170 (1985) (a proceeding is critical "where the results might well settle the accused's fate and reduce the trial itself to a mere formality" (quoting *United States v. Wade*, 388 U.S. 218, 224 (1967)); *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 n.16 (2008) ("proceedings between an individual and agents of the State (whether formal or informal, in court or out), that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary" (citations and internal quotation marks omitted)); *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("critical stages" are those where "defendants cannot be presumed to make critical decisions without counsel's advice").

The Supreme Court of the United States has held that an arraignment *can* constitute a critical stage, in States where defenses must be pleaded at the defendant's arraignment, or are otherwise forfeited.  *Hamilton v. State of Ala.*, 368 U.S. 52, 53 (1961).  Missouri is not such a State.  As we explained in *Woolery*:

> In Missouri arraignments, unlike those in Alabama, "[t]he right to assert any defense or objection is preserved and is not irretrievably lost" if not asserted at arraignment.  *State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968).  Because Missouri arraignments do not carry the same risks and consequences as those in Alabama,

> *Hamilton*'s holding that arraignment was a critical stage of Alabama criminal procedure is not dispositive.

2023 WL 4188250 at *4.

*Woolery* noted that, in a series of cases, the Missouri Supreme Court distinguished *Hamilton* and held that Missouri arraignments are not a "critical stage" at which appointed counsel must be provided for a criminal defendant. *Id.* at *5 (citing *Montgomery v. State*, 461 S.W.2d 844, 846 (Mo. 1971); *State v. Grimm*, 461 S.W.2d 746, 753 (Mo. 1971); *Collins v. State*, 454 S.W.2d 917, 919 (Mo. 1970); *McClain v. State*, 448 S.W.2d 599, 601 (Mo. 1970); *State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968); *State v. Benison*, 415 S.W.2d 773, 775 (Mo. 1967)). *Woolery* explained that, in light of this string of cases directly holding that a Missouri arraignment was not a critical stage requiring the presence of defense counsel, dicta in *Waters*, 370 S.W.3d at 606-07, and *State v. Heidbrink*, 670 S.W.3d 114, 133 (Mo. App. E.D. 2023), suggesting that an arraignment *is* a critical stage, could not be considered controlling. *Woolery*, 2023 WL 4188250 at *3-*5 & n.12.

Because it was not a "critical stage," Logan was required to show that he was prejudiced by the absence of counsel at his arraignment. He has failed to do so. "The entry, without more, of a plea of not guilty, as distinguished from a plea of guilty, without the presence of counsel could not have resulted in any disadvantage to defendant or advantage to the State." *Montgomery*, 461 S.W.2d at 846; *see also Woolery*, 2023 WL 4188250 at *6.

Logan argues that he was prejudiced by the lack of counsel at his arraignment, because his arraignment started the 10-day clock on his right to request an automatic change of judge under Supreme Court Rule 32.07(b). The

11

circuit court notified the Public Defender of Logan's case on the day of his arraignment, and there is no indication in the record when the Public Defender assumed Logan's defense. In addition, Logan made no effort either before or after the 10-day period specified in Rule 32.07(b), to exercise his right to a peremptory change of judge. It would be sheer speculation for this Court to find that the absence of appointed counsel at Logan's arraignment had any meaningful impact on his ability to seek a change of judge under Rule 32.07(b).

Points I and II are denied.

### III.

In Points III and IV, Logan argues that the circuit court denied him his right to counsel at his initial bail hearing, which was held at the same hearing as his arraignment, and at the detention-review hearing held five days after his arraignment, on August 23, 2022.

Whether a defendant is entitled to release pending trial, and if so, on what conditions, are clearly important issues. Depriving a defendant of their liberty, prior to an adjudication of guilt, is significant of itself. But detaining a defendant may also have other serious consequences, including potential loss of employment, housing, and familial relationships. We also recognize that advocacy by trained legal counsel can be helpful to a defendant seeking to be released pending trial.

Despite the important role defense counsel can play in proceedings concerning pretrial detention, Missouri courts have not squarely addressed whether such proceedings constitute a "critical stage" of the proceeding for purposes of the Sixth Amendment's right to counsel. Courts in other jurisdictions

have reached conflicting results concerning whether initial bail hearings, or bail-review hearings, are "critical stages" under the Sixth Amendment.  For cases holding that bail hearings _are_ a "critical stage," *see*, *e.g.*, *Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007); *Smith v. Lockhart*, 923 F.2d 1314, 1319-20 (8th Cir. 1991); *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 739 (S.D. Tex. 2019); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018); *State v. Charlton*, 515 P.3d 537, 545-46 (Wash. App. 2022); *Hurrell-Harring v. State*, 930 N.E.2d 217, 223 (N.Y. 2010).  For cases reaching the contrary result, *see*, *e.g.*, *United States v. Hooker*, 418 F. Supp. 476, 479 (M.D. Pa. 1976), *aff'd*, 547 F.2d 1165 (3d Cir. 1976); *State v. Heng*, 512 P.3d 942, 955-57 (Wash. App. 2022); *Fenner v. State*, 846 A.2d 1020, 1031 (Md. 2004); *Ex parte Stewart*, 853 So.2d 901, 904 (Ala. 2002), *overruled on other grounds by Ex parte Cooper*, 43 So.3d 547, 549-50 (Ala. 2009); *Padgett v. State*, 590 P.2d 432, 436 (Alaska 1979).

Ultimately, we need not decide whether bail-setting or bail-review hearings are "critical stages" of a defendant's criminal prosecution.  Even if bail hearings are critical stages at which an accused is constitutionally entitled to the presence of counsel, the absence of counsel at Logan's initial bail hearing, and at his detention review, was harmless error, and does not justify reversal.  In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court of the United States held that, as a general matter, prejudice is presumed where counsel is entirely absent from a critical stage of the prosecution.  The Court observed that

> There are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. . . . The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.

*Id.* at 658-59. In an accompanying footnote, the Court stated that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25.

The presumption of prejudice from the absence of counsel at a "critical stage" is not absolute, however. In *Satterwhite v. Texas*, 486 U.S. 249 (1988), the Court held that automatic reversal was not required where a capital defendant did not have the assistance of counsel before agreeing to submit to a psychiatric examination, a process which the Court had previously deemed to be a "critical stage" in *Estelle v. Smith*, 451 U.S. 454, 469-70 (1981). *Satterwhite* noted that "not all constitutional violations amount to reversible error," and invoked the harmless error rule, under which a conviction may be affirmed if the prosecution can prove beyond a reasonable doubt that the error did not contribute to the verdict. *Satterwhite*, 486 U.S. at 256. The Court distinguished the case before it from Sixth Amendment violations "that pervade the entire proceeding," and as such can never be considered harmless (such as cases involving counsel with a disabling conflict of interest, or where counsel is absent from a proceeding affecting the entire trial). *Id.* at 256-257. The Court noted that prior cases had stated that "reversal is automatic" where a defendant was denied counsel during a "critical stage." *Id.* at 257. *Satterwhite* distinguished those cases, however, on the basis that they "were all cases in which the deprivation of the right to counsel affected – and contaminated – the entire criminal proceeding." *Id.*

In the wake of *Satterwhite*, numerous courts have held that harmless-error analysis applies where counsel was absent at a critical stage of a criminal proceeding, but the particular event during which the defendant was unrepresented did not taint the entire prosecution. *See*, *e.g.*, *Sweeney v. United States*, 766 F.3d 857, 860-861 (8th Cir. 2014); *United States v. Kaid*, 502 F.3d 43, 45-47 (2d Cir. 2007); *Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007); *United States v. Lott*, 433 F.3d 718, 723 (10th Cir. 2006); *United States v. Owen*, 407 F.3d 222 (4th Cir. 2005); *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998); *but see Musladin v. Lamarque*, 555 F.3d 830, 837-838 (9th Cir. 2009).

Even if Logan's initial bail hearing, and the detention-review hearing held five days later, were "critical stages," the absence of counsel at those hearings constituted harmless error which cannot justify reversal of Logan's convictions. The hearings did not result in Logan irrevocably giving up any important rights or potential defenses, and nothing from the hearings was used as evidence against Logan. Notably, Rule 33.05 itself specifies that the occurrence of a detention-review hearing does not "prohibit a defendant from making subsequent application for review of the defendant's detention or conditions of release under Rule 33.01." Therefore, the holding of Logan's initial bail hearing, and his detention-review hearing, without counsel did not prejudice Logan's ability to later seek more lenient release conditions – much less have any effect on his trial, conviction, or sentencing. Although Logan was able to obtain his release on his own recognizance once counsel appeared on his behalf, he has pointed to nothing which occurred during his detention between his arraignment

15

on August 18, 2022, and his release on September 13, 2022, which affected later proceedings in his case. The absence of counsel during Logan's initial bail hearings was harmless error beyond a reasonable doubt, and cannot justify reversal.

Points III and IV are denied.

## IV.

In his fifth Point, Logan argues that the evidence was insufficient to support his conviction of first-degree trespass, because there was no evidence that Logan either entered or remained unlawfully in a building or inhabitable structure.

"'When reviewing the sufficiency of the evidence, the standard of review on appeal from a bench-tried case is the same as the standard used on appeal of a case tried to a jury.'" *State v. Lehman*, 617 S.W.3d 843, 847 n.3 (Mo. 2021) (citation omitted). Under that well-established standard,

> "this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." "In making that determination, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict."

*State v. Boyd*, 659 S.W.3d 914, 925 (Mo. 2023) (citations omitted).

Logan was convicted of first-degree trespass under § 569.140, which provides in pertinent part:

> 1. A person commits the offense of trespass in the first degree if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property.

2.     A person does not commit the offense of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or otherwise enclosed in a manner designed to exclude intruders or as to which notice against trespass is given by:

(1)     Actual communication to the actor; or

(2)     Posting in a manner reasonably likely to come to the attention of intruders.

In his briefing, Logan states that "it does not appear that the crime of trespass in the first degree is violated [*sic*] when the defendant enters upon the real property of another"; he contends that unlawful entry upon real property is punishable only as second-degree trespass under § 569.150.  Logan's argument simply ignores the text of § 569.140.1, which plainly stated that first-degree trespass may occur when a person "enters unlawfully or knowingly remains unlawfully . . . *upon real property*."  (Emphasis added.)  Unlawful entry upon real property may, in appropriate circumstances, constitute first-degree trespass.

Under § 569.140.2, entering or remaining upon real property only constitutes first-degree trespass if the property is enclosed, _or_ "notice against trespass is given by . . . [a]ctual communication to the actor" or by prominent posting.  In this case, the evidence was sufficient to establish that "notice against trespass" had been "actual[ly] communicat[ed]" to Logan both *before* the August 2022 incident, and *during* that incident.  The restaurant owner testified that he had had problems with Logan at his restaurant prior to August 17, 2022.  The owner testified that Logan came "all the time" to the restaurant, and would yell at customers.  The owner testified that, a "couple [of] weeks before" the August 17 incident, he had called police when Logan had come to the restaurant, and the police had arrested him.  The restaurant owner testified that both he, and the

police, had "told [Logan] to leave and not to come back." In addition, the owner testified that, during the August 2022 incident, he told Logan to leave the restaurant's patio area, but Logan refused, and instead started fighting with the owner, and pulled out a knife. The arresting officer similarly testified (without objection) that the restaurant owner "told me that . . . in the past, he told [Logan] to leave"; the arresting officer also testified that he "had to trespass . . . Mr. Logan on other occasions."

This evidence was sufficient to support the circuit court's finding that Logan had committed the offense of first-degree trespass, because he knowingly entered and remained unlawfully upon the property of the restaurant, despite actual communication (both before and on August 17, 2022) that he was not entitled to be on the property. *See, e.g.*, *St. Louis Cnty. v. Stone*, 776 S.W.2d 885, 888 (Mo. App. E.D. 1989) (while individuals may have implied consent to enter businesses which are open to the public under a "limited privilege," that limited privilege is revoked when "the person is requested to leave by an agent or representative of the owner or possessor and refuses to do so"); *State v. McCarthy*, 715 S.W.2d 337, 338 (Mo. App. E.D. 1986) (affirming first-degree trespass conviction where "the evidence was sufficient to support a finding defendant had received actual notice not to return to the Washington University campus").

Point V is denied.

## V.

In his sixth Point, Logan argues that his conviction for peace disturbance must be reversed, because the evidence was insufficient to prove that he obstructed access to the restaurant.

Logan was charged with peace disturbance for violation the following provisions of § 574.010.1:

> A person commits the offense of peace disturbance if he or she:
>
> . . . .
>
> (2)    Is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing:
>
> . . . .
>
> (b)    The free ingress or egress to or from a public or private place.

Logan argues that he did not obstruct access to the restaurant, because it was the restaurant's owner – not Logan – who actually held the restaurant's front door shut, to keep Logan from entering and assaulting him.

"Obstruct" means "'[t]o hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow . . ., [t]o block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, as to obstruct a road or way.'" *Kerr v. Jennings*, 886 S.W.2d 117, 128 n.3 (Mo. App. W.D. 1994) (quoting BLACK'S LAW DICTIONARY 1077 (6th ed. 1990)).

The owner testified that Logan entered the patio area of the restaurant, and was harassing the restaurant's customers. Based on Logan's behavior, and the

19

owner's prior experience with Logan, the owner attempted to shepherd the restaurant's customers from the patio to the restaurant's interior. The owner attempted to call 9-1-1 from inside the restaurant, but got no response. He testified that, when Logan saw him inside, Logan "come and say bad words to me while I was holding the door, and he tried to open the door." Although the owner asked him to leave, Logan fought with the owner, and brandished a knife. The restaurant owner testified that Logan "tried to open" the door to enter the restaurant; if the owner had not held the door shut, Logan would have come in, wanting to fight.

The restaurant owner's testimony indicates that he and Logan fought over the door of the restaurant, with Logan trying to open it, while the owner was holding it shut. The owner's effort to keep Logan from entering the restaurant, by holding the door, was the reasonably foreseeable result of Logan's abusive and threatening words and his brandishing of a knife, and Logan's continued efforts to enter the restaurant despite the owner's demands that he leave. Holding the door closed was necessary to protect the owner, his customers, and his property from Logan. As such, Logan's behavior was the proximate cause of the owner's effort to hold the restaurant's door shut – even if the owner's conduct is considered to be the act which "physically obstruct[ed]" free ingress and egress from the restaurant. *State v. Burton*, 370 S.W.3d 926, 931 (Mo. App. E.D. 2012) (affirming defendant's conviction of assault of a law enforcement officer, where the defendant fled across a muddy field and over multiple fences and officer was injured in pursuit, because defendant's conduct proximately caused officer's injuries). The owner's response to Logan's actions was foreseeable and typical in

20

such a situation; the owner's conduct was accordingly not an intervening cause which would somehow absolve Logan of criminal responsibility for the obstruction of the restaurant's entrance. *See* 1 Wayne R. LaFave, SUBSTANTIVE CRIM. LAW § 6.4(f)(3) (3d ed. 2022) (a third party's "reaction to the conditions created by the defendant" will constitute an intervening cause breaking the chain of causation "only if [the response] is abnormal (and, if abnormal, also unforeseeable").

The evidence was sufficient to permit the circuit court to determine that Logan's actions proximately caused the owner to hold the restaurant's door shut against Logan's efforts to enter. As such, Logan could be held criminally responsible for "unreasonably and physically obstructing . . . [t]he free ingress or egress to or from" the restaurant through the owner's actions, and accordingly guilty of peace disturbance under § 574.010.1(2)(b).

Point VI is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.

21